E

04/04/2007   15:22   9786878241                    VEVEO                                    PAGE   01/21

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

## SOFTWARE LICENSE AND SERVICES AGREEMENT

THIS SOFTWARE LICENSE AND SERVICES AGREEMENT ("Agreement"), dated and effective as of December 28, 2006 (the "Effective Date"), is entered into by and between Verizon Services Corp., a New York Corporation having a place of business at 1310 North Courthouse Road, Arlington, Virginia U.S.A, for the benefit of itself and its corporate affiliates (collectively and individually, as the context may require, "Verizon" or "Licensee") and Veveo, Inc., a Delaware corporation having a place of business at 40 Shattuck Road, Suite 303, Andover, MA 01810 ("Licensor").

WHEREAS, Verizon is engaged in the business, *inter alia*, of providing information and telecommunications services to business, institutional, and residential customers; and

WHEREAS, LICENSOR has developed or otherwise acquired rights in and to certain content navigation software and technology; and

WHEREAS, Verizon desires to license and to use, and Licensor is willing to grant certain licenses and permission to use, certain of Licensor's software, technology and related materials as hereinafter specified.

NOW, THEREFORE, in consideration of the promises and obligations set forth below, the parties agree as follows:

### 1. DEFINITIONS

(a)  Affiliate shall mean, at any time, and with respect to any corporation or other entity: (i) any other corporation or entity that at such time, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such first corporation or other entity; or (ii) any other corporation or other entity beneficially owning or holding, directly or indirectly, twenty percent (20%) or more of any class of voting or equity interests of the first corporation or any subsidiary or any corporation of which the first corporation and its subsidiaries beneficially own or hold, in the aggregate, directly or indirectly, twenty percent (20%) or more of any class of voting or equity interests. As used in this definition, "Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a corporation or other entity whether through the ownership of voting securities, by contract or otherwise.

(b)  Deliverables means, collectively, the Licensor Materials and the Verizon Materials.

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

(c)  Documentation means the user guides, installation guides, operating manuals, and similar technical reference materials, whether in print or in machine-readable form, specified in Exhibit A or otherwise provided with the Licensed Program(s).

(d)  Intellectual Property Rights shall mean any and all worldwide rights existing now or in the future under patent law, copyright law (including the rights granted under copyright law which shall apply to all technical or other information, and works subject to copyright, as may be manifest in or result from specifications, manuals, reports, drawings, functional or system block diagrams, flow charts, circuit diagrams, design or user documentation, engineering notebooks, schematics, simulation data, software, firmware or other embodiments of information, whether the copyright has been obtained, applied for, or is capable of being applied for), industrial rights design law, semiconductor chip and mask work protection law, moral rights law, trade secret law, and any and all similar proprietary rights, however denominated, and any and all renewals, extensions and restorations thereof, now or hereafter in force and effect.

(e)  Licensed Program(s) means the computer program(s), in object code form, owned or distributed by Licensor and specified in Exhibit A, for which Verizon is granted a license under this Agreement, including each update, correction, and enhancement release thereto received by Verizon from Licensor.

(f)  Licensed Software means the Licensed Program(s) and Documentation specified in Exhibit A.

(g)  Malicious Code means a computer program, computer code or portion thereof designed to corrupt, damage, destroy, or otherwise interfere with the operation of, computing systems, data, software, and/or computer networks, including any "worms," "viruses," trap doors, "Trojan horses," and similar coding. "Malicious Code" also includes any coded instructions, routines, or other method that would enable any person or computer system, to obtain unauthorized access to the computer system or network on which the Licensed Software is installed and any software lock, drop dead device or other "self-help" coding or device. "Malicious Code" will not include any programs, code, instructions, routines or methods which are disclosed in the Documentation or otherwise clearly and unambiguously disclosed to Verizon by Licensor.

(h)  Order means the then-current purchase order documents used by Verizon and accepted by Licensor, such acceptance not to be unreasonably withheld, which are properly executed by an authorized representative of Verizon, including any exhibits, attachments, revisions, and replacements thereto, if any. An Order shall include the fees for all Licensed Software as well as the price of any maintenance and/or other services, if any, ordered by Verizon.

(i)  Specifications means any description of the applicable operating or technical features, functions, performance and/or other attributes of, and requirements for, the Licensed

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

Program(s) which are included in the Documentation, in Exhibit D hereto, or otherwise agreed upon by the parties in writing.

(j)  Use means to do , or have done exclusively on Verizon's behalf, any and all of the following in accordance with the terms hereof: load, execute, employ, utilize, store, display, distribute, maintain and support the Licensed Programs

(k)  Licensor Materials means all materials that are created or used by Licensor during the term of this Agreement, including reports, software, user interface conventions, tools, data, designs and documentation (and all enhancements, modifications and derivatives thereto) which (i) Licensor developed prior to the date of this Agreement, or (ii) Licensor develops independently of the services being performed for Verizon under this Agreement (such as internal research and development).

(l)  Verizon Materials means all materials including software, user interface designs, menu command structures, tools and documentation (and all enhancements, modifications and derivatives thereto) which: (i) Verizon developed prior to the date of this Agreement or (ii) Verizon develops independently of this Agreement and (iii) all materials that are created by Licensor specifically for Verizon and contained in the final work product delivered to Verizon under this Agreement, including reports, software, user interface conventions, tools, data, designs and documentation, but excluding Licensor Materials.

## 2. LICENSE

(a)  License Grant. Subject to the terms of this Agreement (including, but not limited to, payment of all applicable fees), Licensor hereby grants to Licensee, a fully paid, nonexclusive, nontransferable, worldwide right and license to Use, and to allow its Affiliates (for so long as they are Affiliates) to Use, the Licensed Software specified in Exhibit A in connection with Verizon's FiOS TV initiative, on FiOS TV servers and in connection with the television set top box platform to be developed and manufactured by or for Verizon as part of Verizon's FiOS TV initiative (and any other Verizon hardware platforms and initiatives as the parties may subsequently agree in writing) and to distribute such Licensed Software as incorporated in such set top boxes to Verizon's FiOS TV customers. Verizon acknowledges that the right to distribute the Licensed Software is restricted to the client versions of the Licensed Software.

(b)  No Modification. Reverse Engineering. Etc. Except as otherwise permitted applicable law or this Agreement, Licensee shall not, directly or indirectly, cause or authorize the modification, adaptation, translation, decompilation, disassembly, reverse analysis, or reverse engineering of any Licensed Software. Verizon may not create derivative works from the Licensed Software or, except as provided herein, transfer, sublicense, resell or distribute the Licensed Software.

- 3 -

Veveo -- Verizon
Unified Search Engine
Agreement No.: C0608363

(c)  Reservation of Rights.  Licensor shall retain all Intellectual Property Rights in the Licensed
Software, including all updates, corrections, enhancements, and any other modification to
or derivative of the Licensed Software made by Licensor. Except as specified in this
Agreement or any lawful amendment, Licensor grants to Verizon no other licenses, rights,
or permissions, whether express or implied, with respect to the Licensed Software.

(d)  Verizon Responsibilities.  Verizon will fulfill the responsibilities described on Exhibit B.
Verizon acknowledges that Licensor's performance under this Agreement may depend
upon Verizon fulfilling such responsibilities in a timely fashion.

**3.  MAINTAINANCE AND SUPPORT**  Licensor shall provide maintenance and support of
the Licensed Software as provided herein and in Exhibit C.

**4.  ACCEPTANCE OF LICENSED SOFTWARE**  Unless the parties have previously
entered into an evaluation agreement with respect to the Licensed Software, Verizon shall have
a sixty (60) day Acceptance Period, beginning on the date upon which Verizon actually
receives the Licensed Software, during which to evaluate and test the Licensed Software. Such
evaluation and testing will be conducted in accordance with a mutually agreed upon acceptance
test plan. Verizon will notify Licensor in writing of its acceptance or rejection of the Licensed
Software. Verizon may, at any time during the Acceptance Period, cancel the license to Use by
giving written notice to Licensor and returning the Licensed Software to Licensor.  If no
Approval or Cancellation Notice is received by Licensor by expiration of the Acceptance
Period, Licensor shall issue a formal letter to Verizon, referencing this clause of the
Agreement. If (a) no response is received by Licensor within ten (10) days after Verizon's
receipt of Notice Letter, or (b) if Verizon distributes commercially to the public any set top box
or other product into which the Licensed Software is incorporated, then Verizon shall be
deemed to have accepted the Licensed Software. Verizon will notify Licensor in writing if it
distributes commercially to the public any set top box or other product into which the Licensed
Software has been incorporated. All such acceptance testing as well as any other evaluation of
the Licensed Software shall be conducted in accordance with Verizon Technology's Lab Entry
Test Requirements, a copy of which in included as Exhibit E.

**5.  ORDERS; PRECEDENCE; NO MINIMUM COMMITMENT**

(a)  Form of Order.  Each Order shall reference this Agreement thereby incorporating the terms
and conditions hereof and shall contain the following: (i) a list of the Licensed Software
including level of maintenance and support, if applicable, as well as any services,
purchased by Verizon; (ii) the fee(s) for the Licensed Software and services to be
furnished; (iii) the location to which the Licensed Software is to be delivered or the
maintenance, support or other services rendered; (iv) the location to which invoices shall
be rendered for payment; (v) Verizon's Order number; and (vi) any delivery requirements
or the period during which maintenance, support or other services are rendered.

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

(b)  Precedence. The terms and conditions of this Agreement will control over any conflicting
or inconsistent terms contained in any quotation, Order, acknowledgement or invoice. An
Order cannot be used to modify or amend the material terms and conditions of this
Agreement other than provisions such as those relating to quantity, date and location of
delivery of Licensed Software and the duration of maintenance, support and other services.

(c)  Rejection of Orders. Licensor may only reject an Order in good faith and in writing, and
Verizon must receive such notice of any rejection within ten (10) days of Licensor's receipt
of the Order with a detailed explanation of rejection.

(d)  No Minimum Order. There will be no minimum order, quantity or volume required of
Verizon when ordering software, unless otherwise specified in an Order, exhibit or
amendment hereto. Licensor shall not enforce any Order against any Affiliate other than the
Affiliate named on the applicable Order. Nothing herein shall limit the right of Verizon or
any of its Affiliates from obtaining at any time from any third party the same or similar
software as may be obtained or available hereunder.

### 6.  LICENSE FEES AND PAYMENT

(a)  Fees. In consideration of the licenses, rights, and permissions granted hereunder, Licensee
agrees to pay Licensor the fees specified in Exhibit A or an Order issued under this
Agreement. Unless otherwise agreed in writing or in an exhibit hereto, Verizon shall pay
such amount to Licensor within forty-five (45) days after Verizon's receipt of Licensor's
invoice for the Licensed Software, maintenance, support, and/or other services. Payment
shall be made in United States currency by wire transfer to such bank account(s) as
Licensor may specify in writing or as otherwise agreed by the parties.

(b)  Taxes. Licensee shall be solely responsible for any separately stated sales, use, gross
receipts, value-added, excise, property, and other similar transaction tax, tariff, duty, or
assessment ("Tax" or "Taxes"), excluding taxes and assessments based upon or measured
by Licensor's net income, plus any related interest and penalties collected, withheld, levied,
or imposed by any national, state or provincial, or local government, or any subdivision
thereof, arising out of or related to the fees paid by Verizon to Licensor hereunder. Taxes
may be separately stated in a revised or adjusted invoice sent in a timely fashion (not to
exceed sixty (60) days) following the initial invoice for the Licensed Software in question.
Licensor shall not invoice Verizon for Taxes on any Licensed Software or maintenance and
support services that by law are not taxable. Licensor shall have no right to bill and/or
collect Taxes from Verizon where Verizon has complied with available tax exemption
procedures such as a resale exemption certificate, during the effective period of the
exemption. Licensor will reasonably assist Verizon in complying with state laws that
exempt certain methods of software delivery from Tax assessment. Verizon acknowledges
that all Licensed Software, updates and upgrades that Licensor makes available for
electronic distribution and that are acquired by Verizon under the terms of this Agreement,

- 5 -

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

will be transmitted or made accessible to Verizon by way of an electronic medium (internet, telephone transmission, etc.). If the Licensed Software or an update, correction or enhancement thereto is only available in a tangible medium format and cannot be delivered by Licensor through an electronic medium, the parties shall, before shipment of such Licensed Software, update, correction or enhancement, make commercially reasonable efforts to agree on a method for delivery.

## 7. PERFORMANCE WARRANTIES

(a) Performance and Services. Licensor represents and warrants that: (i) the Licensed Software will, at the time of delivery to Licensee and for a period of ninety (90) days thereafter, operate and perform substantially in accordance with the Specifications applicable to the Licensed Software; (ii) the machine-readable media on which the Licensed Software is delivered, if any, will be free of defects in material and workmanship for a period of ninety (90) days following the delivery of the Licensed Software to Verizon; (iii) the Licensed Software will contain no Malicious Code at the time of delivery; and (iv) any maintenance, support or other services provided under this Agreement shall be rendered by professionally trained, qualified personnel who will perform the tasks assigned consistent with best professional practices.

(b) Remedies. Except as provided below, Verizon's sole remedy, and Licensor's sole liability, for breach of the above-made representations and warranties shall include the correction of errors in the Licensed Software, replacement of defective media and/or re-performance of substandard services at no charge to Verizon. If during the warranty period Licensor is unable to correct the Licensed Software or make the Licensed Programs operate as warranted, Licensor shall refund to Verizon the license fee paid hereunder for the defective Licensed Software. In the event of a breach of the representation and warranty under Subsection 7(a)(iii), above, relating to Malicious Code, Licensor shall indemnify for any and all damages, losses, and liabilities resulting from such breach subject to the damage limitation provisions of Section 9. In addition, Verizon shall be entitled, in addition to any other rights and remedies it may have at law or in equity, to seek an injunction enjoining and restraining Licensor from engaging in, or continuing to engage in, actions that violate such representation and warranty. Verizon shall notify Licensor in writing of any errors or defects in sufficient time to afford Licensor a reasonable opportunity to repair or remedy such during the warranty period.

(c) Disclaimer. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN, THE FOREGOING WARRANTIES ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, MADE WITH RESPECT TO THE OPERATION AND PERFORMANCE OF THE LICENSED SOFTWARE AND SERVICES, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF NONINFRINGEMENT, MERCHANTABILITY OR FITNESS FOR PARTICULAR PURPOSE, EVEN IF VERIZON HAS BEEN ADVISED OF SUCH PURPOSE.

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

### 8. INFRINGEMENT

(a) Indemnification. Licensor shall defend, indemnify, and hold Verizon harmless from and against any and all losses, damages, and liability awarded by a court of final jurisdiction or included as part of final settlement, and, irrespective of any final award and/or settlement, attorneys', expert witness or court fees and costs reasonably incurred by Verizon arising from the litigation and/or settlement of any demands, suits, causes of action, or any other action brought by any third party alleging infringement by the Licensed Software of the Intellectual Property Rights of such third party, provided:

(i)   Verizon notifies Licensor promptly, but in no event later than thirty (30) days, in writing of any such infringement allegation, claim, demand, suit, or cause of action by any third party;

(ii)   Licensor has sole control of the defense and all settlement negotiations; and

(iii)   Verizon provides Licensor with the assistance, information, and authority reasonably necessary to perform Licensor's obligations under this Section.

Verizon in its sole discretion may also participate in the defense thereof by employing counsel at Verizon's expense, without waiving Licensor's obligations to indemnify, defend, and hold harmless. Licensor shall not settle or compromise any such infringement allegation, claim, demand, suit, or cause of action, or consent to the entry of any judgment thereon that requires Verizon (A) to pay any amounts for which it is indemnified hereunder or (B) to admit wrongdoing, and without an unconditional release of all liability by each claimant or plaintiff to Verizon.

(b) Defense and Limitations. In addition to its obligations under Subsection 8(a), Licensor may, at its cost and in its sole discretion, obtain the right for Verizon to continue Using the allegedly infringing material, replace or modify the same so that it becomes noninfringing, or if such remedies are not reasonably and promptly available, to provide Verizon a prorated refund of the fees paid for the infringing Licensed Software upon the return or destruction of the Licensed Software. Notwithstanding any other provision of this Agreement, Licensor shall have no liability or obligation to Verizon with respect to any claim to the extent that such claim is based upon:

(i)   the Use of any version of the Licensed Software other than a current, unaltered (by Licensor) release of the Licensed Software if such infringement would have been avoided by the Use of a current, unaltered release;

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

(ii) the combination, operation, or Use of the Licensed Software with software or hardware other than as provided by Licensor, if such infringement would have been avoided in the absence of such combination, operation, or Use;

(iii) Verizon's failure to Use a noninfringing version of the Licensed Software provided by Licensor at no charge; or

(iv) modification of the Licensed Software by anyone other than Licensor.

(c) This Section 8 states the entire liability of Licensor and the sole remedies of Verizon in respect of any intellectual property claim.

9. **LIMITATION OF LIABILITY** TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER PARTY NOR ANY OF THEIR RESPECTIVE AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES, OR AGENTS SHALL BE LIABLE FOR ANY SPECIAL, INCIDENTAL, INDIRECT, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER, INCLUDING LOST OR ANTICIPATED PROFITS, BASED ON ANY BREACH OR OTHER ACT OR OMISSION ARISING OUT OF, RELATING TO, OR OCCURRING IN CONNECTION WITH, THIS AGREEMENT. THESE LIMITATIONS SHALL APPLY REGARDLESS OF WHETHER THE LIABILITY ARISES OUT OF BREACH OF CONTRACT, BREACH OF WARRANTY, TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY) OR ANY OTHER THEORY. NEITHER PARTY WILL BE LIABLE FOR DIRECT DAMAGES IN EXCESS OF THE AMOUNTS PAID OR PAYABLE TO LICENSOR HEREUNDER, PROVIDED THAT ALL OF THESE FOREGOING LIMITATIONS SHALL NOT APPLY TO LICENSOR'S INDEMNIFICATION OBLIGATIONS UNDER SECTION 8 OF THIS AGREEMENT OR TO ANY BREACH OF CONFIDENTIALITY OBLIGATION AND PROVIDED FURTHER THAT ANY DIRECT DAMAGES SUFFERED BY VERIZON AS A RESULT OF LICENSOR'S BREACH OF ITS OBLIGATIONS RELATING TO MALICIOUS CODE UNDER SECTION 7(B) SHALL NOT EXCEED $1,000,000. This Section 9 shall not limit a party's separate statutory rights and remedies under applicable Intellectual Property Rights laws.

10. **INSURANCE** Licensor agrees to maintain during the Term all insurance or bonds required by law or this Agreement, including, but not limited to (i) Worker's Compensation; (ii) employer's liability insurance (and/or an umbrella policy) with limits of at least one million dollars ($1,000,000) for each occurrence, and (iii) comprehensive general liability insurance including products liability and motor vehicle insurance, each with limits of at least one million ($1,000,000) per occurrence/two million dollars ($2,000,000) combined single limit for bodily injury, including death, and/or property damage, and (iv) errors and omissions coverage in the amount of one million dollars ($1,000,000) per occurrence/combined single limit. Licensor shall cause Verizon to be included as an additional insured under its general liability policy (as "Verizon Communications Inc. and its Affiliates and subsidiaries") and Verizon's coverage

- 8 -

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

under such policy shall be primary and the parties waive their rights of subrogation against the
other. Licensor shall, as soon as practicable after the Effective Date of this Agreement, furnish
to the address specified in Section 21 (Notices), certificates or evidence of the foregoing
insurance indicating the amount and nature of such coverage, the expiration date of each
policy, and stating that no material change or cancellation of any such policy shall be effective
unless thirty (30) days' prior written notice is given to Verizon.

## 11. INTELLECTUAL PROPERTY OWNERSHIP

(a)   In consideration of and effective upon Licensor's receipt of all payments required for the
applicable Deliverables under this Agreement, Verizon shall own all Intellectual Property
Rights in and to the Verizon Materials developed by Licensor specifically for Verizon
under this Agreement. Such Verizon Materials shall constitute "works made for hire" for
Verizon within the meaning of the Copyright Act of 1976, as amended, and shall be the
exclusive property of Verizon.  In consideration of and effective upon Licensor's receipt of
all payments required for the applicable Deliverables under this Agreement, Licensor
hereby assigns to Verizon all such rights in the Verizon Materials relating to such
Deliverables.

(b)   Verizon acknowledges and agrees that Licensor retains all right, title and interest in the
Licensor Materials.  In consideration of and effective upon Licensor's receipt of all
payments required for the applicable Deliverables under this Agreement, Licensor hereby
grants to Verizon a non-exclusive, non-transferable, royalty-free license to use, copy,
operate and process the Licensor Materials solely for use in connection with the Verizon
Materials prepared by Licensor hereunder and relating to such Deliverables

(c)   Licensor acknowledges and agrees that Verizon retains all right, title and interest in the
Verizon Materials, whether created or developed under this Agreement or otherwise.

(d)   Notwithstanding anything in this Agreement to the contrary, each party shall be free to use
for any purpose any information in intangible form which its employees may retain in
unaided memory, such as industry knowledge, ideas, concepts, know-how and techniques,
which do not contain any of the other party's Confidential Information.

## 12. TERM AND TERMINATION

(a)   Term. This Agreement shall become effective as of the Effective Date and, except as
otherwise provided herein or unless the parties hereto agree in writing to an earlier or later
termination date, shall continue for a period of one (1) year commencing on the successful
completion of the joint operational completion review of the Licensed Software at the first
VHO ("Video Home Office"), which will occur no later than ten (10) days of commercial
service launch of the Mercury project ("Commercial Service Launch") (the "Term").

-9-

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

Verizon shall notify Licensor in writing of Commercial Service Launch.  For the purposes of clarity, Commercial Launch Date shall be synonymous with General Availability (G.A.) date.

If the Commercial Service Launch does not occur by December 31, 2008, then this Agreement will automatically terminate as of such date.

(b)     Termination for Material Breach.

Either party may terminate this Agreement based upon the material breach of the other party and the failure of the breaching party to cure such material breach within thirty (30) days of receipt of written notice by the non-breaching party.

(c)     Obligations upon Termination.  Upon any termination of this Agreement for any reason, all licenses granted to Verizon hereunder shall immediately cease, and Verizon shall return or completely and permanently destroy all copies of the Licensed Software in its possession and cease Using the Licensed Software as of the effective date of such termination; provided, however, that in the event Verizon terminates this Agreement due to a material, uncured breach by Licensor, Verizon shall have the right to continue Using the Licensed Software for which it has paid in full  in accordance with terms hereof for the remainder of the Term.

### 13. CONFIDENTIALITY

(a)     Definition.  The parties agree that, in the course of performing their respective obligations hereunder, each may obtain information relating to the other and the other's business and operations that is of a confidential and proprietary nature to such other party.  Such confidential information ("Confidential Information") shall include, without limitation, the trade secrets, know-how, formulas, compositions of matter, inventions, techniques, processes, programs, diagrams, schematics, source or object code, technical information, documentation of either party, as well as any business, customer, or financial information, sales and marketing plans or the "technology roadmaps" of either party.  Confidential Information shall, if in written or other tangible form, be marked as "confidential," "proprietary" or with words of similar import.  If in oral or other intangible form, Confidential Information shall be identified as confidential or proprietary at or before the time of its disclosure.  Confidential Information shall include the Licensed Software, irrespective of any marking or notice of confidentiality, and the terms of this Agreement.

(b)     Each party shall:

(i)     Use the other party's Confidential Information only in connection with fulfilling its obligations and exercising its rights, licenses, and permissions under this Agreement;

- 10 -

Veveo -- Verizon
Unified Search Engine
Agreement No.: C0608363

(ii)  Hold each other's Confidential Information in strict confidence and exercise due care with respect to its handling and protection, consistent with its own policies concerning the protection of its own Confidential Information of similar importance, but in no instance less than reasonable care;

(iii)  Not disclose, divulge, or publish the other party's Confidential Information except to such of its responsible employees, subcontractors, consultants (collectively, "Permitted Personnel") who have a bona fide need-to-know and who have executed written confidentiality or other agreements no less restrictive than the terms of this Section 13, to the extent necessary to fulfill such party's obligations or exercise such party's rights under this Agreement;

(iv)  Instruct all Permitted Personnel not to disclose the other party's Confidential Information to third parties without the prior written permission of the other party;

(v)  Not remove any copyright notice, trademark notice or any other confidential or proprietary legend set forth on or contained within the Confidential Information; or

(vi)  Copy, or otherwise duplicate any Confidential Information of the Disclosing Party, in whole or in part, including derivations, except in pursuit of the rights, licenses and obligations of this Agreement.

(c)  Excluded Information.  Notwithstanding Section 9(a) above, Confidential Information shall not include, and this Agreement shall not impose any obligation on either party to protect or otherwise hold in confidence, any information or material that:

(i)  Before its disclosure to the recipient party, is lawfully and rightfully known by or available to the recipient party without restriction on use or disclosure, as evidenced by prior written records or other evidence in possession of the recipient party;

(ii)  Through no breach of this Agreement is or hereafter becomes part of the public domain;

(iii)  Is developed by the recipient party independently from the Confidential Information of the originating party, as evidenced by prior written records or other evidence in the possession of the recipient party;

(iv)  Is lawfully received by the recipient party from a third party without restriction on use or disclosure and without breach of this Agreement or any other agreement, or breach of any fiduciary obligation or obligation of confidentiality, as evidenced by reasonably documented proof; or

- 11 -

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

(v)   Is approved for public release or use, without restriction on use or disclosure, by
written authorization of the originating party.

(d)   Compliance with Government, Judicial Requirements.   Notwithstanding anything herein
to the contrary, either party shall be authorized to disclose Confidential Information of the
other pursuant to the requirement or request of a government agency or court of competent
jurisdiction, to the extent such disclosure is required by a valid and applicable law,
regulation, or court order and, if permitted by applicable, regulation or court order, notice is
given by the disclosing party of any such requirement or request, which notice is adequate
to enable the originating party, at its cost, to seek an appropriate protective order or
exemption from such requirement or request.

**14. EXPORT ADMINISTRATION**  Both parties shall comply fully with all relevant
regulations of the United States Department of Commerce to assure that neither the Licensed
Software, nor any direct product or portion thereof, are exported, directly or indirectly, in
violation of United States law.  Licensor shall assist Verizon in complying with United States
export control law and regulation by furnishing to Verizon the Export Commodity Control
Numbers ("ECCN's") applicable to the Licensed Software.

**15. GOVERNING LAW**  This Agreement shall be governed by and construed in accordance
with the laws of the state of New York, and all cases and controversies arising under or related
to this Agreement shall be subject to the exclusive jurisdiction of the courts therein.

**16. INTENTIONALLY OMITTED**

**17. ENTIRE AGREEMENT; AMENDMENTS**

(a)   This Agreement constitutes the entire agreement and understanding between the parties
with respect to the subject matter hereof and supersedes and replaces any prior or
contemporaneous undertakings, commitments or agreements, oral or written, as to the
same.

(b)   This Agreement may be modified or amended only by an instrument in writing signed by
authorized representatives of the parties on or after the Effective Date.

**18. NO ASSIGNMENT**  Neither party may assign this Agreement without the prior written
consent of the other party, which consent shall not be unreasonably withheld or delayed;
provided, however, that either party may, without the consent of the other party assign any or
all of its rights and obligations hereunder to an Affiliate, or to purchasers or successors in
interest to those portions of such party's business as to which such assigned rights and
obligations pertain. Any attempted or purported assignment or transfer in violation of this
paragraph shall be void *ab initio*.

- 12 -

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

**19. SUCCESSORS AND ASSIGNS**  This Agreement is intended to benefit and shall be binding on the parties hereto and their respective successors and permitted assigns.

**20. SEPARATE ENFORCEMENT OF PROVISIONS**  If, for any reason, any provision of this Agreement shall be determined to be invalid, void or unenforceable by a court or regulatory body of competent jurisdiction, the remaining provisions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated unless removal of the provision in question results in a material change to this Agreement.

**21. FORCE MAJEURE**  Neither party shall be responsible for any delay or failure in performance of any part of this Agreement to the extent that such delay or failure is caused by fire, flood, explosion, war, acts of terrorism, embargo, government requirement, civil or military authority, acts of God, labor strikes, the infrastructure of the Internet, or any circumstances beyond its control and not involving any fault or negligence of the party affected ("Condition"). If any such Condition occurs, the party delayed or unable to perform shall promptly give written notice to the other party and if such Condition remains at the end of thirty (30) days, the affected party may elect to terminate any Order or part thereof affected by the Condition, or suspend such Order for the duration of the Condition .

**22. HEADINGS**  The headings in this Agreement are included for convenience and identification only and are in no way intended to define or limit the scope, extent or intent of this Agreement or any of the provisions hereof.

**23. SURVIVAL**  The respective obligations of the parties under this Agreement that by their nature would continue beyond the termination, cancellation or expiration, including, but not limited to, obligations to indemnify, insure and maintain confidentiality shall survive the termination, cancellation or expiration of this Agreement.

**24. PUBLICITY**  Licensor shall not use in any advertising, publicity or other public disclosures, any information concerning its engagement hereunder or disclose the terms and conditions of this Agreement or any Order or subsidiary agreement hereunder, without the prior written consent of Verizon.

**25. NO WAIVER**  No failure or delay by a party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or future exercise of any right, power or privilege.

**26. NOTICES**  All notices or other communications required or permitted to be made or given hereunder by one party to another party shall be in writing and shall be deemed to have been given when hand delivered, or when sent by electronic facsimile (with confirmation of its receipt by the other party), or regardless of whether or not received, on the firth (5th) business day after deposit in the United States mail in certified form, postage prepaid with return receipt

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

requested, and, in all cases, properly addressed to such other party as set forth below or at such
other address as may be specified by the parties hereto by written notice sent or delivered in
accordance with the terms hereof:

| | |
|---|---|
| Verizon: | Verizon Services Corp. |
| | Attn.: Strategic Sourcing |
| | Paul Pluta |
| | 240 East 38th Street, 14th Floor |
| | New York, NY 10016 |
| | Telephone: 212-338-7004 |
| | Facsimile: 212-338-6489 |
| | |
| LICENSOR: | Veveo, Inc. |
| | Attn.: Chief Financial Officer |
| | 40 Shattuck Road, Suite 303 |
| | Andover, MA 01810 |
| | Telephone: 978-687-8240 |
| | Facsimile: 978-687-8241 |

**27. AUTHORITY** The individuals executing this Agreement for and on behalf of the parties
hereto represent that they are fully authorized and empowered to do so for and on behalf of
their respective principals.

**28. EXECUTION IN COUNTERPARTS** This Agreement may be executed in any number
of counterparts, each of which shall be deemed an original, and all of which together shall
constitute but one and the same instrument.

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

**EXHIBITS:**
Exhibit A: Licensed Software, Services and Pricing
Exhibit B: Verizon Obligations
Exhibit C: Maintenance and Support
Exhibit D: Requirements Document
Exhibit E: Lab Entry Criteria
Exhibit F: Guidelines for Reimbursement of Travel Expenses
Exhibit G: Security Requirements
Exhibit H: Enhancement Request Process (ECR Process)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as
of the Effective Date.

**VERIZON SERVICES CORP.**          **VEVEO, INC.**

By: _____          By: _____

Name: _____          Name: _____

Title: _____          Title: _____

Date: _____          Date: _____

**VERIZON SERVICES CORP.**

By: _____

Name: _____

Title: _____

Date: _____

- 15 -

Dec 29 06 08:04a      Ingalls Home Fax                         703-860-9305      p.1
                      ~~~ ~~~ ~~~~   ~~~~~   ~~~~~~~~~~~    VEVEO                PAGE  01/01

Veveo — Verizon
Unified Search Engine
Agreement No.: C0608363

**EXHIBITS:**
Exhibit A: Licensed Software, Services and Pricing
Exhibit B: Verizon Obligations
Exhibit C: Maintenance and Support
Exhibit D: Requirements Document
Exhibit E: Lab Entry Criteria
Exhibit F: Guidelines for Reimbursement of Travel Expenses
Exhibit G: Security Requirements
Exhibit H: Enhancement Request Process (ECR Process)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as
of the Effective Date.

VERIZON SERVICES CORP.               VEVEO, INC.

By: _____               By: _____

Name: _Robert E. Ingalls Jr_        Name: _Michael A. Koenig_

Title: _EVP_                         Title: _Vice President of Sales_

Date: _12/29/06_                     Date: _December 27, 2006_

VERIZON SERVICES CORP.

By: _____

Name: _Robert E. Ingalls Jr_

Title: _EVP_

Date: _12/29/06_

DEC-29-2006 08:50A FROM:STRICKLAND              18125156630          TO:12123386489          P.2

12/27/2006  17:43    9786878241                    VEVEO                                            PAGE  01/01

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

**EXHIBITS:**
Exhibit A: Licensed Software, Services and Pricing
Exhibit B: Verizon Obligations
Exhibit C: Maintenance and Support
Exhibit D: Requirements Document
Exhibit E: Lab Entry Criteria
Exhibit F: Guidelines for Reimbursement of Travel Expenses
Exhibit G: Security Requirements
Exhibit H: Enhancement Request Process (BCR Process)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the Effective Date.

**VERIZON SERVICES CORP.**                    **VEVEO, INC.**

By: _____              By: _____

Name: Shawn Strickland                         Name: Michael A. Koenig

Title: Vice President GoTV Plm                  Title: Vice President of Sales

Date: 29 Dec 06                                Date: December 27, 2006


**VERIZON SERVICES CORP.**

By: _____

Name: _____

Title: _____

Date: _____

Dec 29 06 08:04a    Ingalls Home Fax                                703-860-9305        p.1
                                                   VEVEO                             PAGE  01/01

Veveo ~ Verizon
Unified Search Engine
Agreement No.: C0608363

**EXHIBITS:**
Exhibit A: Licensed Software, Services and Pricing
Exhibit B: Verizon Obligations
Exhibit C: Maintenance and Support
Exhibit D: Requirements Document
Exhibit E: Lab Entry Criteria
Exhibit F: Guidelines for Reimbursement of Travel Expenses
Exhibit G: Security Requirements
Exhibit H: Enhancement Request Process (ECR Process)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as
of the Effective Date.

**VERIZON SERVICES CORP.**            **VEVEO, INC.**

By: _____          By: _____
Name: _Robert E. Ingalls Jr_         Name: _Michael A. Koenig_
Title: _EVP_____           Title: _Vice President of Sales_
Date: _12/29/06_____             Date: _December 27, 2006_

**VERIZON SERVICES CORP.**

By: _____
Name: _Robert E. Ingalls Jr_
Title: _EVP_
Date: _12/29/06_

DEC-29-2006 08:58A FROM:STRICKLAND        12125*56638       TO:12123386489      P.2

12/27/2006  17:43    9786878241              VEVEO                          PAGE  01/01

Veveo ~ Verizon
Unified Search Engine
Agreement No.: C0608363

**EXHIBITS:**
Exhibit A: Licensed Software, Services and Pricing
Exhibit B: Verizon Obligations
Exhibit C: Maintenance and Support
Exhibit D: Requirements Document
Exhibit E: Lab Entry Criteria
Exhibit F: Guidelines for Reimbursement of Travel Expenses
Exhibit G: Security Requirements
Exhibit H: Enhancement Request Process (ECR Process)

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as
of the Effective Date.

**VERIZON SERVICES CORP.**            **VEVEO, INC.**

By: _____        By: _____

Name: Shawn Strickland               Name: Michael A. Koenig

Title: Vice President GosTv Plan     Title: Vice President of Sales

Date: 29 Dec 06                      Date: December 27, 2006


**VERIZON SERVICES CORP.**

By: _____

Name: _____

Title: _____

Date: _____

DEC 29 '06 09:02                                    12125956638      PAGE.02

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363

Veveo – Verizon
Unified Search Engine
Agreement No.: C0608363